Last argument for the morning is Seay v. Oklahoma Board of Dentistry 21-6054. Counsel for Appellants, would you make your appearance and proceed? Yes, Your Honor. Thank you. May it please the Court, my name is Rachel Moore, and I'm here on behalf of the Appellants Dr. Joseph Seay and Dr. Lois Jacobs. The central issue in this appeal is whether the continuing violation doctrine can be applied to 1983 actions and whether that doctrine can be applied to the specific facts of this case. I would like to spend a lot of time telling the Court about all of the credentials, education, and experience that my clients have, but we've laid that out pretty thoroughly in our brief. So, I'll get to the heart of it. The heart of it is the continuing violations doctrine as you see it, right? Yes, it is. And I just want to be clear, you're not trying to make a repeated violations doctrine argument? No, Your Honor, we're not. It's a continual violation doctrine. Okay. Let me fast forward for a quick second because I want to make sure I get this question out, and it relates to your antitrust claims, your claim. On the timing of the claim, the notion that it was a continual conspiracy, I understood to be important to that argument the fact that the statute was amended in 2015. Am I correct about that? Yes, Your Honor, you are correct. And what is it about the amendment in 2015 that made this sort of a distinct act that allowed for the continuation of the conspiracy? That's exactly where I need to get to. Thank you, Your Honor. In 2015, the statute was, I'd say, dramatically changed. It was similar, but the formation or the format of the statute was different. But what changed dramatically was that prior to 2015, the statute said that a specialty had to receive the approval of the American Dental Association and the Commission on Dental Accreditation. As of 2015, the statute said that the specialty had to be accredited by the Commission on Dental Accreditation. And that changed the perspective entirely. Many specialties were not accredited for a long period of time. And in this case, the Commission on Dental Accreditation just began to accredit anesthesiology and dentistry programs in 2005. In 2008, the Commission on I bring that up because that is the school that Dr. Joe C. graduated from. Okay, let me stop you to make sure I understand. You say prior to 2015, the statute provided that a specialty, it had to be a specialty of the American Dental Association, and it had to be accredited by the Commission on Dental Accreditation? No, Your Honor. Prior to 2015, it just said approved by the Commission. Okay, so the difference is approved and accredited? Yes, and accredited is a marked difference. So as of 2015, the statute reads accredited in the policy of the Oklahoma Dental Board, and they pled it in this case is that because Dr. C. did not graduate from a CODA accredited program, he may never receive a specialty license in the medical school in 1980 in anesthesiology. And the argument from the Dental Board is the same, according to the statute. Their interpretation of the statute is that Dr. Jacobs can never receive a specialty license because she didn't graduate from an accrediting school. Okay, what would approval look like vis-a-vis as opposed to accreditation? I mean, it's in broad terms, what's the difference? It could be in a number of ways. So I'll give you an example of oral surgeons. Oral surgeons they didn't have the accrediting requirement. It was the approval requirement pre-2015. And so if an oral surgeon graduated from school prior to approval from CODA, the Commission on Dental Accreditation and the ADA, they could be grandfathered in under Oklahoma law. As a matter of fact, in this case, we produced evidence that a doctor who was an endodontist, who had that same situation, was grandfathered in, although he had not graduated from a CODA accredited school. But in the plaintiff's case, the defendant's decision and the policy from the Dental Board, stemming from the statute saying accreditation, is that these two plaintiffs may never get a specialty license because they did not graduate from an accrediting institution. Okay, so they could have still pre-2015. There was greater flexibility in the statute under the approval requirement that at least under the interpretation taken post to the 2015 statute, if you didn't graduate from an accredited institution, you're done. That's absolutely right. And I think the court knows from the pleadings that prior to 2015, in the early 90s, Dr. Jacobs was prosecuted by the board for advertising as a specialist. Dr. C was similarly prosecuted by the board in the early 2000s. But it's that 2015 statute that we actually met the statute of limitations, the two-year statute of limitations. We filed it in June of 2017. The 2015 statute was passed and effective in July of 2015. So we filed our action in June of 2017. Let me ask you, in light of the 2021 amendments, and you make some reference to this in your brief, but I want to make sure I have it clear what your argument is. In light of the 2021 amendments, why isn't this case moved? That's a good question. And I've spent a lot of time looking at case law and pondering it. This case is about a long-standing constitutionally defective law, which as applied to these plaintiffs, has deprived them of their rights to First Amendment speech, to due process of law, and to equal protection. So it is for Dr. Jacobs, for instance, the 40 years of her entire anesthesiology career, she has been burdened with this unconstitutional statute. For Before you go to the but, she can advertise that she holds this degree. She just can't say that as a dentist, I'm holding this degree. I think the Oklahoma Court of Appeals said that, didn't it? Well, the Oklahoma Court of Appeals, Your Honor, said that the prosecution of Dr. Jacobs for her yellow page ad violated her First Amendment rights to speech. That's true. But the law stayed the same throughout this whole time period. But it doesn't matter. The law states she can still do that. She just can't advertise as a dentist that she has that. No, no. As a matter of fact, Your Honor, the statute reads that no dentist shall represent himself or herself to the public as a specialist unless they receive the specialty license. To give you an example, it would be like for us. It would be like an attorney who's licensed to practice law in Oklahoma. And after he gets the license, studies patent law and passes the patent bar. But the laws of the state of Oklahoma and the Oklahoma Bar Association say he cannot represent himself to the public as a patent lawyer. It's that kind of thing. Or an orthodontist. He can still advertise. He can advertise that he offers patent representation, but he cannot advertise as a patent lawyer. In my example, for these appellants, they cannot advertise that they are specialists, that they hold a specialty license for the administration of anesthesia in Oklahoma. This is all they do. They are strictly anesthesiologists, and yet they have been the law. Other oral surgeons can advertise as specialists. Endodontists can advertise as specialists, but these anesthesiologists may not. I want to follow up on Judge Baldock's question because I was struggling and am struggling with the same point that Judge Baldock is addressing. As I understood it, that the Oklahoma Court of Appeals for Dr. Jacobs said that Dr. Jacobs could advertise in the yellow pages that she was specially qualified as a dental anesthesiologist. So, I've got a couple of questions. The first is, is there anything that Dr. Jacobs wants to be able to do that the Oklahoma Court of Appeals hasn't already said under the First Amendment that they've already adjudicated that she's allowed to do? Is there anything further that she would like to do? Yes, I'd like to say three things on that point. What the Court of Appeals did, this was simply an appeal of a disciplinary action against her by the Oklahoma Dental Board, and what the Court of Appeals said is that that discipline was inappropriate or wrong because it violated her constitutional rights. It did not strike down the law. It did not declare it was unconstitutional. It didn't do anything to the law, and the law remained on the books. What Dr. Jacobs and Dr. C would like to do is advertise and represent themselves to the public and let the public know that they hold a specialty license in anesthesiology in the state of Oklahoma. Okay, along those lines, Dr. C is already advertising that he is an anesthesiologist. He is, yes, but he cannot advertise that his specialty is in anesthesiology. That's like an endodontic dentist could not advertise as specializing in by this dental act. Now, let me go back to the moodiness question for a quick second. You have a part of your claim is declaratory relief, injunctive relief, and then there's the claim for damages. Well, what you said about the notion that they've been harmed by this all their life and their professional career to be specific, this restriction, that seems to go to the question of damages. What declaratory or injunctive relief is still available to you given the 2021 amendment is what I'm talking about. Yes, your honor. Thank you, and I think I didn't get to your point on moodiness. Because they have been damaged for their careers, the lawsuit is still viable and valid, and we don't yet know if they will be granted a specialty license even today because the defendants have pled that neither of them graduated from an accredited school, and therefore they can never get the specialty license. So, we have no idea. Is that a product of the regulation? Because, I mean, the statute now lists, does it not, the 2021 statute does list anesthesiology as an approved specialty, right? It does, and there are some caveats. They have to be approved by this national board that has now kind of taken over the role of the Commission on Dental Accreditation, so they have to have that approval. But the policy of this dental board has been that they may not achieve this licensing because of their accreditation status. Okay, so you're saying the statute does not fully, and I'm talking now declaratory and injunctive relief, the statute does not, the declaratory injunctive relief is not mooted by the statute because it's still not clear that they will be able to be accredited or be able to advertise as specialists and that sort of thing, right? That's true, but there's another part of these amendments to the statute. For instance, in 2018, the statute said that the dental board shall use only guidelines adopted by the ADA. In 2019, after the ADA approved dentist anesthesiology as a specialty, the statute was again amended, and the statute in 2019, you would think they would have added dentist anesthesiology, but they did not. Well, 2018 and 2019 are arguments related to pleading that you didn't get to file, right? I mean, the district court denied you the right to supplement your pleading. Right, that's true. So all I'm trying to ensure and be clear on is the fact that the statute in 2021, the amendments actually expressly now includes dental anesthesiology as a specialty. It is your position that that does not give you full relief. There is still relief in the world that you would get, right? Yes. Perspectively and injunctively. Exactly, Your Honor. Okay, put a fine point on it. What would that relief be? The relief would be obviously to be granted a dental and anesthesiology specialty license, and my clients have asked for damages. We would also like- Oh, no, no, no, no. I'm not talking about damages now. I accept that that's not mooted. What I'm saying is the injunctive and declaratory relief, the statute on the book says now, you are an improved specialty anesthesiologist. And so what is it that they can, if there's some restriction that they still face apart from the statute? Yes. So if they file an application, which Dr. C has already done, if they file an application now and dental anesthesiology is in the statute, there's another tweaking of that statute that says that the Oklahoma Dental Board may use the guidelines of the ADA. So it gives them discretion. And there has been, Your Honor, a continuing policy of discrimination against anesthesiology in Oklahoma. So we do not know. We would like to have a dental specialty license in anesthesiology granted by the board. We'll have to go before the board and have an actual hearing on the subject. All right. Thank you. That's not an issue then in this case. It hasn't happened yet. Dr. C filed an application in 2017 and the board has not granted him a hearing. All right. Your time, Ms. Moore. My time is up. I thought I'd reserve. Well, we'll see how things go. You may. All right. Don't call yourself out yet. You may get. All right. I won't. But let's hear from Mr. McCaleb. Thank you, Your Honor. I'm pleased to be here. I'm Stephen McCaleb. I represent the Oklahoma Board of Dentistry and the individual board members. I'm assuming you can hear me. Yes, sir. Thank you. Assuming you're correct, you can hear me then. Has the board not, have they not granted a hearing on the new application? Well, Ms. Jacobs, Lois Jacobs, under the new statute, as Judge Holmes pointed out, she has recently applied and she was granted a licensure pending supplementing. She has to transcript. But the board has approved her. Dr. C, who is the co-plaintiff, has not newly applied based on the new statute. Well, I didn't see any argument in your briefing, nor did you separately raise this question in remoteness. Counsel for the appellant, commendably, at least up front of the issue, that there was a possible concern. What is your amendment that moots it? And I'm talking now declaratory and injunctive relief only. I mean, is there any bar in the existing regulatory structure, apart from the statute, that would prevent these appellants from getting the full relief that their complaint requests? It does not. So Dr. C, who is the co-plaintiff, he filed his application in 2017, and he's been licensed since 2001. And on his application, he put quite a few things on there that just said that information is on file, which is just not something that we recognize. So yes, that is true. That never occurred as far as having a hearing for him. But we did advise counsel for Dr. C of the supplemental information that was required. I guess my point is, as a dental anesthesiologist in 2021, post-amendment, is there anything that in the regulatory structure, apart from the statute, that would prevent the appellants here from functioning fully as dental specialists? Specialists being able to advertise as specialists, being able to present themselves to the public as specialists. Is there anything that would prevent that? It was my understanding that your regulations still did not recognize dental anesthesiology. Is that not correct? Nope. As of the 2021 statutes, they are allowed to be recognized as anesthesiology specialists, as long as they the proper application. The regulations of the board do not exclude them as specialists? You are correct. I am correct that the regulations do exclude them as specialists? Nope, they do not. They do not. Okay. So are you conceding that they are entitled to advertise in regards to their specialty? Well, let me explain that as far as getting a specialty license. Why don't you answer yes or no and then explain your answer. Let's go that way. I'm not conceding. All right, now go ahead. All right. So as of 2021, the Oklahoma legislature, it was not the board, enacted statutes to recognize that dental anesthesiologists can get a specialty license. Mr. McKell, please go ahead. I'm sorry if I didn't come through. As of 2021, the Oklahoma legislature has enacted statutes to allow them to be recognized as dental anesthesiologists specialists. Well, the way you frame that gives one a natural pause when you do a distinction between the board and what the Oklahoma legislature did, because the appellants have to now come to the board. Are you saying that the board is going to do something different than the legislature did? Absolutely not. Okay. So quite apart from whether they have all their paperwork in and all these other things that are just sort of ministerial, are you then telling me that these appellants on the specific issue of being dental anesthesiologists, that these specialists in the state of Oklahoma? Yes, sir. Okay. So, Mr. Caleb, as I understand your alternative argument for affirmance in light of the discussion about the 2021 amendment, is that prior to the recent statutory amendment, your position, as I understand it, is that the board would have been prohibited from granting a specialty license to Dr. C or Dr. Jacobs. And so therein lies your argument for alternative affirmance, but that that is no longer true once in light of the 2021 amendment, because as you just mentioned several times to my colleagues, the board is now authorized under the recent statute to grant a specialty license to both of them. Am I correct? You are correct, sir. Has the damage claims got anything to prevent this from going on, proceeding on before the board? Not from our perspective. I mean, right now, I mean, we've been operating under Oklahoma statutes for the whole time. So now that the legislature has told us they can be recognized as specialists, so they follow an appropriate application, and it's supportive, then yes, they will be licensed. Now, let me also say that the way the system works, they're both licensed as dentists, and they're both doing anesthesiology work. So it's not like they're not being prohibited from doing their vocation. Well, I don't think that really helps them. I mean, that's not what they're after. They, you know, I can say I'm a lawyer practicing labor law, but if it matters, if it's a distinction with a difference that I say I'm a labor law specialist, I want to be able to do that. And as I understand it, they went to school for additional periods of time to be able to do what they do. So I mean, that I don't I think that would be sort of Paul, poor comfort for them. In that regard, let me ask you a question about the continuing violations doctrine. Is it your position that essentially assuming argue window position, even assuming the continuing violations doctrine applies in the 1983 context, they don't get the benefit of it? In other words, their claims do not qualify for the continuing violation doctrine? Or is it a or or is it your view that it never applies in the 1983 context, which is? It's our view that as the Western District found that if an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statute limitations. So the answer to your question is yes, we do not think that they can overcome the continuing violation doctrine. That it ever applies in the context of 1983. Yes, sir. Okay, well. Okay, well, the the the district court relied on on the Martin case, did it not in its continuing violations analysis? It did, yes. And and haven't we held in in subsequent case law that Boyer and Davidson and Martin is no longer valid in this in defying the terms of the continuing violation? Well. Candy. Yeah, judge. I'm not sure about that. And that was not briefed by Appellants Council. Okay, well, then let's not eat up your time. Move on then. I probably shouldn't say anything because I'm fairly confused right now as to what's going on. Sure, that was counsel. That's not the first time. But it just appears to me from listening to oral argument and questions by us. And as to my own confusion, it looks to me like we may need supplemental briefing on on mootness. You're reading my mind, Judge Baldock, but I was gonna deal with that later. But But beyond that, I'm sorry, go ahead. I just it just struck. All right. That answers my question. Thank you. All right. So So at least as things stand now, you just adhere to the district court's position on how it construes the continuing violation doctrine, and therefore it is not applicable to their claims. Is that fair? Yes, sir. Okay. Any other questions for Mr. McKayla? Okay. Do you have further Mr. McKayla? We certainly are here to hear you. We're here to please proceed. No, I just would like to point out again, the fact that the my clients have been operating under statutory law enacted by the Oklahoma legislature. So I just, that's something that beat to death in my brief. So I would just like to point that out again. Let me ask, I just have one just factual question, if you happen to remember. Did did the 2021 amendment go into effect before or after just reduced the rule? After? Okay, thanks. Well, I don't have anything further unless you do, Mr. McKayla. We will accept your argument. And as I promise this more, we will add a minute only. And let's hear from you. Thank you, your honor. I need to point out one thing. I think Mr. McKayla maybe misheard you. I don't think that the board's regulations have been changed to include dentist anesthesiology, at least not yet. They have not yet promulgated their rules to change that. That was number two. So their regulations still do not. Yes, your honor. And number two, Mr. McKayla gave me news today that I had no idea about that Dr. Jacobs application had been approved. She has not been notified of any approval. She's not been notified that any kind of consideration has been placed before the board for the approval of her application. I do need to real quickly talk about, and I would love to brief further if the court will permit us, but not just on mootness. This court has approved in two cases, the application of the continuing violation doctrines, 1983 cases. Number one case is Corbett versus Anderson out of Wyoming, involving a psychologist and a competing psychology center. And the other case is Robinson versus Marufi that involved a conspiracy to frame Robinson for a crime. And in the district court there approved the continuing doctrine in that case because the conspiracy started before the limitations time and continued all the way up until the time Robinson was acquitted. And this court in both of those cases approved the application of the continuing violation doctrine to 1983 cases. Well, I said, I'm sorry. That's okay. If you would submit supplement, is that, are those cases in your brief? Those two cases, your honor, are not in my brief. I'll submit a supplemental 28J letter on that because I didn't recall those cases. And so that's a little bit of news to me. All right. Anything further? I do that. Oh, sorry. Yes, your honor. Please judge Bacarach. I was going to submit the case. So please go ahead. Ms. Moore, can I just ask you about the alternative argument for affirmance? The defendant has argued that prior to the, well, prior to the 2021 amendment, the board under the statutory regime at the time could not have granted a special legal license by virtue of the way that the legislature had enacted the statute up until 2021. Obviously the statute has changed, but we are reviewing what Chief Judge DeGiuste ruled prior, it sounds like prior to the enactment of the statute. It certainly didn't go into the briefing before Judge DeGiuste. And you did file a reply, but you didn't address that. We do have cases. So I guess I've got a two-fold question. One is, did you rejoin her to the alternative argument for affirmance by declining to address that? But I'll give you your chance now to tell me how could the board have incurred liability either for equitable or monetary relief if prior to 2021, they were prohibited by the legislature for granting a specialty license to either one of these doctors? Yes. Thank you, your honor, for the question. I think the first part, you were wondering if the board prior to 2021 could have granted a specialty license. And I think they could because in other cases, like with oral surgeons and with endodontics, they have grandfathered those doctors in. But secondly, there seems to be the idea that the legislature doesn't get information from the specialists, from the dental board. Of course, the dental board is the one that apprises the legislature of what kind of law or what kind of amendments need to be enacted. But to go to the heart of your question is this. This board has known since 1993 that they were operating under an unconstitutional statute. And they kept it on the books. And they held it in place. And they continued with a policy of discrimination, knowing that it was a constitutional violation for all of these years. All right. Thank you, counsel, for your fine arguments. Case is submitted.